Charles CASTO, Plaintiff-Appellant,

v.

The ARKANSAS–LOUISIANA GAS COMPANY, a Delaware Corporation, Defendant-Appellee.

No. 77–1732.

United States Court of Appeals, Tenth Circuit.

Argued March 12, 1979.

Decided May 4, 1979.

Owen L. Oliver, Arvada, Colo. (John M. Merritt and D. Chad Ransdell, Oklahoma City, Okl., on brief), for plaintiff-appellant.

Donald R. Wilson of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for defendant-appellee.

Before McWILLIAMS and DOYLE, Circuit Judges, and MARKEY,* Chief Judge.

MARKEY, Chief Judge.

Casto appeals from a judgment dismissing his complaint for loss of his wife's consortium. We affirm.

## Facts

Following a gas explosion in their Lamont, Oklahoma home, Casto joined Peggy, his wife, in suing the Arkansas-Louisiana Gas Company (Arkla) in July, 1975, claiming $600,000 in damages for Peggy's injuries, $20,000 for loss of their joint property, and $200,000 for Casto's loss of consortium. When a pretrial order was signed, Casto elected not to proceed on his claim for loss of consortium. On March 30, 1976, the jury awarded Peggy $100,000 and Casto and Peggy $10,000. Arkla paid the awards with interest on May 18, 1977. Casto filed the present complaint on April 15, 1977, seeking $250,000 for loss of consortium and $1,000,-000 in punitive damages. Arkla moved to dismiss, saying Casto had split his cause of action. On June 25, 1977, Judge Eubanks granted the motion, viewing Casto as having abandoned his cause of action for loss of consortium.

## Issue

Whether the district court erred in dismissing the complaint.

## OPINION

■ In the present case, a single event—a gas explosion—occurred. Casto sued for damage to his property and for loss of consortium. In the pretrial order, proffered in lieu of the pleadings, he dropped his claim for loss of consortium. In his brief here, Casto tells us that he

elected not to proceed in that prior action for [loss of consortium] for the reason that certain evidence which would be presented in his cause of action (to wit: the mental depression he suffered) would be detrimental to Peggy's claim for her injuries.

Casto does not explain, nor do we readily see, how his mental depression could in any way affect the factual determination of either the cause or extent of Peggy's injuries. If it could, we are at painful loss to understand how the judicial system is aided by Casto's hiding the fact from the jury and setting aside his mental depression for a second exercise of the judicial process.[1] Whether a plaintiff drops a claim in silence as a trial tactic or in hope of greater recovery in two suits than in one, the facts of the present case constitute a strong argument against multiple actions by a single plaintiff[2] for different items of damage arising

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. This diversity action is one of 172,000 suits filed before 373 active district judges in 1977. No responsible person wants to slam the door against those who must use the federal courts. But the effect is the same when the courthouse door is jammed by those who need not be there.

   This case also illustrates the clash between the lawyer's twin duties of advocating a client's interest and avoiding manipulation of the judicial process. Though often difficult, even seemingly on occasion impossible, the fine measuring of his roles as advocate and court officer is one of the gleaming gems in the professional counselor's crown. If the judicial process is to function as a free flowing fountainhead of justice, it must be respected and protected, not just used.

   The concern is not to make the careful, contemplative conduct of the judge's job easier, but to make it possible.

2. Casto repeatedly refers in his brief, a large portion of which is identical with that filed below, to the irrelevant contention that Peggy's claim for her injuries and his claim for loss of consortium are separate causes of action.

from a single wrong. Whether one plaintiff plus one event can always equal one trial, it can at least be said that a plaintiff who calls into play the massive machinery of a federal court, with a complaint containing two claims arising from a single event, owes a duty to act definitively with respect to both claims. The silent setting aside of one claim, with a secret intent to later institute a repeated exercise of the judicial process, violates not only the interest of the defendant in meeting all claims against him in a single action, but the interests of other litigants waiting in line at the courthouse door, and the interests of taxpayers paying the costs of conducting the judicial process twice when once would do.

■ Against the injury to all those interests, Casto argues that (1) abandonment applies only to actions, not causes of action, (2) his causes of action for injury to his property and for loss of consortium are separate and distinct, and (3) the present facts require an exception to the rule that all causes of action arising from a single wrong should be brought in a single action.[3]

■ Because a judgment may be affirmed on any ground arising from the record, *Jaffke v. Dunham,* 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957), and because the result is the same whether Casto be viewed as having abandoned an action, abandoned a cause of action, or split a cause of action, Casto's argument (1) is irrelevant. Judge Eubanks correctly noted that Casto had placed his claim for loss of consortium at issue and then simply dropped it, taking no steps to preserve it. That circumstance prompted the district court to say:

> The abandonment of a cause of action may be implied from a plaintiff's acts, or from his omissions. In either event, the

effect thereof (absent proper reservation of the claim by way of, for example, Rule 15 or Rule 41, Fed.R.Civ.P.) is that the cause of action is extinguished and any subsequent suit thereon precluded. See, generally, *Murphy v. Benson,* 270 F.2d 419 (2d Cir. 1959), cert. denied, 362 U.S. 929, 80 S.Ct. 750, 4 L.Ed.2d 747 (1960); *Union Oil Co. of Calif. v. Hunt,* 111 F.2d 269 (9th Cir. 1940). See also *Jehovah's Witnesses v. King County Hosp.,* 278 F.Supp. 488, 498 (W.D.Wash.1967), aff'd per curiam, 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158 (1968). [Footnote omitted]

In support of his argument (2), Casto cites sixteen decisions of state courts in twelve states. Conspicuously absent is a single citation from a court of Oklahoma, whose state law we must apply. Casto attempts to distinguish one of many Oklahoma decisions relied on by defendant, i. e., *Lowder v. Oklahoma Farm Bureau Mutual Insurance Company,* Okl., 436 P.2d 654 (1967),[4] (holding that claims for injury to property and for personal injury arising from a single tort were not separate causes) on the ground that we here deal with claims for injury to property and for loss of consortium.[5] In the present context, we are unable to discern a determinative distinction in that difference.

In contention (3), seeking an exception to the rule against splitting causes of action arising from a single tort, Casto cites his sole Oklahoma case, *Smittle v. Eberle,* Okl., 353 P.2d 121 (1960). But in that case, there were two plaintiffs, the court recognizing that the parents sued as "next friends" of their children, on a cause of action for the children's injuries, and in their own names on another cause of action for their loss of

---

**3.** Casto nowhere asserts that he did not have full and fair opportunity to litigate his claim for loss of consortium, or that he was by any one denied his "day in court" on that claim.

**4.** The case is not listed in the Index of Authorities in Casto's brief.

**5.** Casto, whose brief cites seventeen state court cases and not a single federal court case, also asserts that *Lowder* should be ignored because "State court decisions are not binding," con-

tending, without citation of authority, that the questions here are procedural. Not only is the characterization non-governing, *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), but federal court decisions compel the *Lowder* result. As this court said in *United States v. Sinclair Refining Company,* 126 F.2d 827, 831 (10th Cir. 1942):

> A plaintiff cannot split up his claim or demand and prosecute it in piecemeal fashion by separate suits.

the children's services. Thus *Smittle* is not inconsistent with long lines of federal court decisions such as *Bethlehem Steel Corp. v. Holmes,* 322 F.Supp. 711 (N.D.Okl.1971); *Barnhart v. International Harvester Company,* 309 F.Supp. 206 (N.D.Okl.1970); *Public Service Company of Oklahoma v. Crane Company,* 48 F.R.D. 424 (N.D.Okl.1969), aff'd, 467 F.2d 1143 (10th Cir. 1972); and *Sharrock v. Perkins,* 297 F.Supp. 1285, 1286–87, (W.D.Okl.1969), where it was said:

> It is the rule in Oklahoma that a single cause of action may not be split and a tort feasor has a right to be proceeded against in a single action by an injured party for a single wrong or tort * * * ;

and state court decisions such as *Lowder v. Oklahoma Farm Bureau Mutual Insurance Company,* supra; *Hugh Breeding, Inc. v. Godwin,* 208 Okl. 617, 258 P.2d 157 (1953); *Stanley v. Sweet,* 202 Okl. 448, 214 P.2d 906 (1950); and *Akin v. Bonfils,* 67 Okl. 123, 169 P. 899 (1917).

Casto last argues that because a husband and wife may sue separately for his loss of consortium and her injuries, and one must join the other in a claim for injury to their joint property, it would be unjust to force joinder of their separate claims. We need not consider that broad question. Our simple holding is that where, as here, a plaintiff joins in a suit, includes multiple claims for his damages from the single tort on which the suit is based, and in silence drops one claim, he may not, after judgment in that suit, maintain a separate second suit on that dropped claim.

The judgment of the district court is affirmed.